## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

STEVE MILLER, BILL WESLEY, JANE
KRANZ, KATHI YARBOROUGH,
SANTIAGO RESTREPO, JAMES
SALVATORI, SCOTT LYNCH,
MAUREEN SCHECHTMAN, KEVIN
WILLIAMS, TERRY WARD, LIDIA
BRAVO, LILIYA KRASILNIKOVA, TOM
MARTELLO, CARLOS RESTREPO,
LOUISE SKINIOTES, ALEXANDER
SKINIOTES, BRIAN PATTERSON AND
CLIFF ASBURY,

        Plaintiffs,

v.

NATIONAL CITY CORPORATION,
NATIONAL CITY BANK D/B/A
NATIONAL CITY MORTGAGE AND
NATIONAL CITY MORTGAGE
COMPANY,

        Defendants.

Case No. 08-CV-4016

Judge: Joan H. Lefkow

Magistrate Judge: Morton Denlow

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF

Plaintiffs' Motion for Injunctive Relief falls far short of meeting Plaintiffs' burden for a preliminary injunction. Plaintiffs' motion does not recite the elements for injunctive relief, much less establish their existence here, and likely does so for good reason. Plaintiffs simply cannot establish claims for conversion and theft are baseless. Indeed, their motion ignores Plaintiffs' unclean hands in continuing to maintain affiliations with and doing work for their former employer, Legacy Home Mortgage, while at the same time working for National City. Plaintiffs' conduct put at risk confidential and proprietary information belonging to National City (including its customers' private information), potentially damaging both National City and its

customers.  National City seeks through this Response – and through Defendants' Motion for a

Preservation and Inspection Order (Dkt. No. 15) – to protect its information, and has no interest

in any property actually belonging to Plaintiffs.  Accordingly, as discussed below, this Court

should deny Plaintiffs' Motion for Injunctive Relief.

## BACKGROUND

From approximately August 2007 until June 6, 2008, Plaintiffs were employees of

National City Bank at its branch office located at 12800 South Ridgeland, Unit H, Palos Heights,

Illinois.  (Steven Stapleton Declaration ¶ 2).[1]  Plaintiffs were employed by National City Bank

had the job responsibility of, among other things, soliciting mortgage loan clients and preparing

mortgage loan applications for those clients and potential clients.  *Id.*  In the course of their job

duties, Plaintiffs were required to collect financial information from clients and potential clients,

including bank statements, credit information, personal contact information, and debt and

liability information.  *Id.*

Prior to being employed by National City Bank, some or all of the Plaintiffs were

employees of Legacy Home Mortgage ("Legacy").  *Id.*  Legacy also is in the business of

originating home mortgage loans.  Legacy also operated out of office space at 12800 South

Ridgeland, Palos Heights, Illinois.  *Id.*

As National City Bank employees, Plaintiffs agreed, by way of signature, that they would

abide with the policies, terms and conditions of employment defined in both the National City

Employee Handbook and their individual Compensation Agreements.  Notably, the National

City Employee Handbook and the Plaintiffs' respective Compensation Agreements prohibit

concurrent employment with a non-National City mortgage entity.  Plaintiffs also acknowledged

---

[1] Mr. Stapleton's declaration is attached as Exhibit 1 to Defendants' Motion for a Preservation and Inspection Order (Dkt. No. 15).

that they could not damage, lose or use in an unauthorized manner, any National City proprietary and confidential information (*e.g.*, customers private financial information) – including through the transmission of data or other stored electronic information.  Plaintiffs were at all times aware that all National City facilities, including the Palos Heights branch, were to be used exclusively for business purposes.

In approximately the spring of 2008, National City began an investigation of employees, including Plaintiffs, at the Palos Heights location for suspected fraudulent mortgage practices. (Stapleton Dec. ¶ 3).  As a part of this investigation, on or about June 6, 2008, National City management personnel visited the Palos Heights location to interview employees.  *Id.*  During their visit, National City management personnel observed that a Legacy Home Mortgage office continued to operate in the office space adjacent to National City.  (Stapleton Dec. ¶ 4).  National City management personnel also observed an open walkway between National City's office and Legacy's office.  (Stapleton Dec. ¶ 5).  In addition, National City management personnel discovered a variety of Legacy promotional materials, marketing materials and letterhead throughout National City's office space.  *Id.*  National City management personnel also observed approximately 14 computers and 2 servers in National City's office space that were not issued to the employees by National City.  (Stapleton Dec. ¶ 6).  These computers were located on employees' desks in addition to National City computers that were issued to each employee.  *Id.* During employee interviews, it was revealed that these 14 non-National City computers and 2 non-National City servers were used by the Palos Heights employees when they worked for Legacy, and still were used by the employees when they worked for National City Bank, in addition to their National City issued computers.  *Id.*

As a result of these findings, National City suspended the Plaintiffs' employment status and directed them to leave the Palos Heights location.  Among the items Plaintiffs left behind in

the Palos Heights office when they were suspended were the non-National City issued computers and non-National City issued servers.

National City's subsequent investigation revealed that National City funds were used to pay invoices for a variety of Legacy Home Mortgage's services, including advertising costs, utility expenses, and a Legacy golf outing. Based on these findings, and National City's conclusion that Plaintiffs continued to have an affiliation with Legacy Home Mortgage and continued to perform work for Legacy while National City Bank employees (including the transmission of electronic information to non-National City issued computers and servers), National City terminated Plaintiffs' employment.

Since Plaintiffs' termination, National City has had several discussions, both verbal and written, with Plaintiffs and Plaintiffs' counsel about the return of Plaintiffs' personal items left behind at the Palos Heights location. (*See e.g.*, 06/26/08 Letter from R. Towner Guess to A. Bruggeman, Exhibit 1.) National City has made this property available to Plaintiffs on more than one occasion and some Plaintiffs have availed themselves of this opportunity and retrieved their personal items. (*See e.g.*, 07/10/08 Letter from B. Knight to A. Bruggeman, Exhibit 2.)

National City and Plaintiffs have not, however, agreed on disposition of the non-National City-owned computers and servers left at the Palos Heights location. Because Plaintiffs used those computers while National City employees and because Plaintiffs had, as their primary job responsibility, the duty to collect and analyze confidential customer financial data and to input that information on databases, National City has sought to ensure that those computers and servers do not contain National City customer information. Indeed, as discussed more fully in Defendants' Motion for a Preservation and Inspection Order (Dkt. 15), National City has a duty under federal law to maintain the confidentiality of such information. Accordingly, National City requested from Plaintiffs on multiple occasions to have a third-party forensic specialist

review the computers and servers to identify and retrieve any National City customer

information.  Plaintiffs refused all such requests and instead filed the instant lawsuit.  (*See e.g.*,

07/01/08 Letter from A. Bruggeman to R. Towner Guess, Exhibit 3.)

**ARGUMENT**

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be

granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Boucher v.*

*Sch. Bd. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998) (citing *Mazurek v. Armstrong*, 520 U.S.

968, 972 (1997) (emphasis added)); *see also Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir.

1999).  Plaintiffs, in seeking a preliminary injunction, must, as a threshold matter, establish "(1)

a likelihood of success on the merits, (2) irreparable harm if the preliminary injunction is denied,

and (3) the inadequacy of any remedy at law." *Cooper*, 196 F.3d at 813.  *See also Christian*

*Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (citation omitted).  If Plaintiffs carry

their burden with respect to these threshold requirements, the Court then balances "(4) the harm

to plaintiffs if the preliminary injunction were wrongfully denied against the harm to the

defendant if the injunction were wrongfully granted, and (5) the impact on persons not directly

concerned in the dispute (the 'public interest')." *Cooper*, 196 F.3d at 813.  Moreover, where as

here, Plaintiffs seek an order requiring the performance of an affirmative act (*i.e.*, a change to the

status quo), Plaintiffs have an even higher burden "to establish that this extraordinary relief is

justified." *Global Relief Foundation, Inc. v. O'Neill*,  207 F. Supp. 2d 779, 787 (N.D. Ill. 2002).

Plaintiffs do not and cannot meet their burden here.

**I.      INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE**
**NOT AND CANNOT MEET THEIR BURDEN OF PERSUASION.**

      **A.      Plaintiffs Cannot Prevail On The Merits.**

Plaintiffs' Complaint asserts two causes of action against National City – conversion and

theft.  To prevail under these theories under Illinois law, Plaintiffs must show: "(1) a right to the

property; (2) an absolute and unconditional right to the immediate possession of the property; (3)

a demand for possession; and (4) that the defendant wrongfully and without authorization

assumed control, dominion, or ownership over the property."[2]  *Van Diest Supply Co. v. Shelby*

*County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) citing *Cirrincione v. Johnson*, 184 Ill. 2d

109, 703 N.E.2d 67, 70 (Ill. 1998).  Plaintiffs here can show neither that they owned the property

truly in question in this litigation – the information on the computers and servers – nor that

National City wrongfully took control over any of Plaintiffs' property.  Accordingly, their

Motion must be denied.

As a threshold matter, Plaintiffs cannot show that the information on the computers and

servers at the Palos Heights location belongs to them.  Indeed, Plaintiffs have not even put forth

evidence that they own the computers themselves, making only unsupported and conclusory

allegations to this effect in their Complaint.  And any customer information on those computers

and servers clearly does not belong to them.  Plaintiffs were hired to originate loans and had job

duties that included collecting financial and other personal information from prospective and

current National City customers, input such information into computer databases, and complete

mortgage loan applications for these customers.  Plaintiffs have acknowledged that this personal

customer information belongs to National City and that they had an obligation, as National City

employees, to maintain its confidentiality.  Moreover, National City has the obligation under the

Gramm-Leach-Bliley Act (15 U.S.C. ¶ 6801 et seq.) to ensure the protection and non-disclosure

of confidential client information, and failure to do so constitutes a breach of National City's

regulatory obligations, making it subject to damages and penalties.  Thus, there is no dispute that

---

[2] Civil "theft," as pled in the Complaint, is not a recognizable cause of action under Illinois law.  Given that
Plaintiffs plead identical facts and relief, National City treats both counts as premised on the tort of  "conversion."

National City, not Plaintiffs, owns any confidential and proprietary information on the computers and servers at the Palos Heights location and has an obligation to preserve its confidentiality.

National City has never refused to return to Plaintiffs any physical property remaining at the Palos Heights location, even the computers.  As noted, National City attempted on multiple locations to return any personal items of Plaintiffs and sought with respect to the computers and servers only to have a third party review them to image any National City customer information so that it could be removed and protected from disclosure, consistent with Plaintiffs' obligations as former employees' and National City's obligation under federal law.  National City has only sought to protect its own property from improper disclosure.  Plaintiffs have steadfastly refused to allow National City to retrieve its property and accordingly have put National City at risk of loss of what indisputably is its property interest in its customer information.  Under such circumstances, Plaintiffs cannot establish that they are likely to prevail on the merits of their claims of conversion and theft – they have not even come close with the Motion *sub judice*.

> **B.    Plaintiffs Cannot Show Irreparable Harm Or That The Remedy At Law Is Inadequate.**

Plaintiffs also cannot establish that they lack an adequate remedy at law or that they will suffer irreparable harm in the absence of a preliminary injunction.  *See Graham v. Medical Mutual of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) ("Irreparable harm is harm 'which cannot be repaired, retrieved, put down again, atoned for . . . .  The injury must be of a particular nature, so that compensation in money cannot atone for it.'"); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (defining irreparable harm as "harm that cannot be prevented or fully rectified by the final judgment after trial").  Indeed, Plaintiffs' own court filings establish that they have an adequate remedy at law – money damages.  Because Plaintiffs identify the contested property at issue as being only the computers left at the Palos Heights location – as

noted, National City has repeatedly tried to return all other property – Plaintiffs cannot claim that the value of the property is not ascertainable. In fact, Plaintiffs acknowledge the ascertainability of their purported damage through their prayer for money damages on both causes of action. *See* Compl. pp. 4, 5.

Plaintiffs' unsubstantiated and conclusory statement that they "have suffered irreparable harm both personally and professionally in not being able to use, possess, access, and control their personal property and will suffer harm including a substantial loss of business…." Mot. ¶ 12, p.3, does not establish that they will suffer irreparable harm. Again, National City has offered to return any customer information or files not belonging to National City. And, in any event, it is well established under Illinois law that loss of business is subject to quantifiable money damage analysis, and Illinois law provides for compensatory damages for any lost business incurred during a period of conversion. *See e.g.*, *Cruthis v. Firstar Bank, N.A.*, 354 Ill. App. 3d 1122, 822 N.E.2d 454 (Ill. App. 5th Dist. 2004) ("The law recognizes an award of damages for conversion based on the reasonable value of the use of the property during the period of wrongful detention."); *see also Crosby v. City of Chicago*, 11 Ill. App. 3d 625, 628, 298 N.E.2d 719 (Ill. App. 1st Dist. 1973) ("It is the law of Illinois that . . . where plaintiff's claim is for detention of a chattel, the proper measure of damages is [ ] the reasonable value of the use during the period of wrongful detention."). Thus, whether Plaintiffs identify their damage as the loss of the physical property itself or the loss of business, they have an adequate remedy at law. For this reason as well, the Motion should be denied.

### C.    National City Will Suffer Irreparable Harm If the Injunction Issues.

Unlike Plaintiffs, National City will suffer irreparable damage if this Court issues an injunction and does not allow it to protect its proprietary and confidential customer information. It is well-established that this Court must consider the irreparable harm the defendant might

suffer if the Court issues the preliminary injunction. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d at 387. Specifically, the Court must consider "harm that would not be either cured by the defendant's ultimately prevailing in the trial on the merits or fully compensated by the injunction bond that Rule 65(c) of the Federal Rules of Civil Procedures requires the . . . plaintiff to post." *Id.*

Again, here, National City has an obligation to protect from disclosure private and financial information of its customers. National City's obligation in this regard arises both under federal law – including under the Gramm-Leach-Bliley Act (15 U.S.C. ¶ 6801 et seq.) – and its assurances to customers that their sensitive information will remain confidential. Should National City lose control of any of this information, its customers may suffer consequences ranging from stolen credit information to identity theft, and National City may find itself subject to federal criminal penalties and civil liability from an unknown number of customers. Even worse, however, would be the potential loss in reputation and goodwill that National City could suffer if its customers' information were improperly disclosed. *Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) (noting "that showing injury to [reputation and] goodwill can constitute irreparable harm that is not compensable by an award of money damages.")

Given that Plaintiffs have not made *any* showing of irreparable harm, Plaintiffs Motion accordingly should be denied.

## II.    PLAINTIFFS REQUEST FOR EQUITABLE RELIEF SHOULD BE DENIED DUE TO THEIR UNCLEAN HANDS.

Plaintiffs' request for injunctive relief should be denied for the additional reason that Plaintiffs come to this Court with unclean hands. It is well established that an equitable remedy, such as an injunction "will not be granted to an individual who has acted in bad faith with respect

to the transaction that has been brought before the court." WRIGHT, MILLER & KANE, FEDERAL

PRACTICE AND PROCEDURE: Civil 2d § 2946. As such, courts routinely deny injunctive requests

when the Plaintiffs enter court with unclean hands, especially where there is a nexus between the

unclean hands and the facts at issue. *See e.g.*, *Tenneco Auto. Operating Co. Inc., v. Hyrad Corp.*,

2002 WL 1632499, No. 02 C 0728, *3 (N.D. Ill. July 23, 2002). Indeed, as articulated by the

Seventh Circuit, the doctrine of unclean hands mandates "that equitable relief will be refused if it

would give the plaintiff a wrongful gain." *Scheiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014,

1021 (7th Cir. 2002). *See also Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985)

("'unclean hands' really just means that in equity as in law the plaintiff's fault, like the

defendant's, may be relevant to the question of what if any remedy the plaintiff is entitled to. . . .

An obviously sensible application of this principle is to withhold an equitable remedy that would

encourage, or reward (and thereby encourage), illegal activity." (Citation omitted.).)

     The very reason that this litigation arose was that Plaintiffs were discovered to have

maintained an ongoing relationship with Legacy Home Mortgage when they were supposed to be

exclusive employees of National City. In particular, Plaintiffs used computers and servers that

they obtained while Legacy employees to transact business while employees of National City, at

National City's offices, while in communication with National City customers, and did so

without National City's knowledge or consent. Plaintiffs maintained Legacy e-mail addresses

and transmitted information between National City and their Legacy addresses. Plaintiffs, or at

least some of them, also authorized the use of National City's funds for the purpose of promoting

Legacy's business, including advertising and golf outings. Plaintiffs' actions violated the terms

and conditions of their employment and placed National City in the precarious position of having

to take measures to preserve the privacy of the company and its clients – the very facts that

predicate this lawsuit.  Plaintiffs should not be rewarded for their ill-behavior; their request for

equitable relief should be denied.

### <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs' Motion for Injunctive Relief should be denied.


Dated: July 29, 2008                                  Respectfully submitted,

                                                      s/ Michael J. Gray
                                                      _____
                                                      Michael J. Gray (IL Bar No. 06210880)
                                                      E-mail:  mjgray@jonesday.com
                                                      Brent D. Knight (IL Bar No. 6251708)
                                                      E-mail: bknight @jonesday.com
                                                      Rheaana Towner Guess (IL Bar No. 6284151)
                                                      E-mail: rguess@jonesday.com
                                                      JONES DAY
                                                      77 West Wacker, Suite 3500
                                                      Chicago, IL  60601-1692
                                                      Telephone:     (312) 782-3939
                                                      Facsimile:     (312) 782-8585

                                                      Attorneys for Defendants
                                                      National City Corporation, National City Bank
                                                      and National City Mortgage Company

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **Defendants' Response to Plaintiffs' Motion for Injunctive Relief** to be filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record on July 29, 2008.

> Alan Bruggerman
> Bruggerman, Hurst & Associates, PC
> 20012 Wolf Road, Suite 200
> Mokena, Illinois, 60448

> s/ Rheaana Towner Guess
> Rheaana Towner Guess

# Exhibit 1

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692
TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

Direct Number: (312) 269-4071
rguess@jonesday.com

June 26, 2008

JP011198:amr
CHI-1653586v1

<u>VIA FAX AND UPS NEXT DAY</u>
Mr. Alan Bruggeman
Bruggeman, Hurst & Associates, PC
20012 Wolf Road, Suite 200
Mokena, Illinois, 60448

Re:    <u>National City Mortgage/Steve Miller</u>

Dear Mr. Bruggeman,

Pursuant to your June 26, 2008 letter, National City would like to inform you that Mr. Miller, and all other former National City employees working out of the Palos Heights location, will be able to retrieve their personal property boxes on Friday, June 27, 2008 and Monday, June 30, 2008 during regular business hours. We ask that this process be performed in an orderly fashion. Please note that all personal property was carefully boxed and prepared for retrieval. Pursuant to corporate policy, National City is not responsible for any allegedly lost or missing personal items.

Pursuant to our conversation yesterday, the non-National City computers on the desks of the former National City employees at the Palos Heights location will not be available for retrieval tomorrow. As you may know, there is evidence that Mr. Miller, and the other former National City employees working out of the Palos Heights location, engaged in inappropriate activities for the benefit of Legacy while employed by National City. This evidence includes, but is not limited to, employee paycheck receipts showing that these National City employees received compensation from Legacy during the time they were employed by National City. We also have records demonstrating that these National City employees used National City funds to pay for credit reports of customers who secured loans with banks other than National City. Based on this information, we have a strong indication that National City business and customer information was commingled with Legacy information and likely is contained on the non-National City computers at issue. As I am sure you are aware, we have an obligation to our customers to protect such private information from disclosure and misuse. Again, I request that you encourage your clients to permit a neutral third party to review the non-National City computers to locate and remove any National City confidential customer information. As I mentioned, this will be a very brief process and the computers should be returned immediately following the review. If your clients continue to refuse this review, we will be forced to take further legal action.

Very truly yours,

Rheaana Towner Guess

# Exhibit 2

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692
TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-85£

Direct Number:  (312) 269-4071
rguess@jonesday.com

JP011198:amr
CHI-1653586v1

July 10, 2008

**VIA FAX AND UPS NEXT DAY**
Mr. Alan Bruggeman
Bruggeman, Hurst & Associates, PC
20012 Wolf Road, Suite 200
Mokena, Illinois, 60448

Re:    National City Mortgage/Steve  liller

Dear Mr. Bruggeman,

  This letter follows up on our June 26, 2008 correspondence whei in we arranged for your clients to retrieve their personal property from National City Mortgage Compan 's Palos Heights location.  As you recall, we arranged for former National City employees to retrieve tl ir personal property on Friday, June 27, 2008 and Monday, June 30, 2008 during regular busine hours.  Apparently, none of the former employees you represent picked up their belongings, and thei property remains at the location.  If your clients would like to pick up their personal items, pleas contact me to set up a mutually agreeable time for them to do so.  Likewise, we also are aware f approximately 55 boxes containing Legacy company files that need to be returned.  Please contac me to discuss a mutually agreeable time for those files to be delivered to Legacy.

  It also has come to our attention that Legacy would like an AT&' technician to enter National City's office space to set up phone lines for Legacy.  In light of the sensi ve nature of the personal computers and related materials currently housed in the location, we requ st that the AT&T technician not enter National City space until the present issues have been resolved.

  Please contact me if you would like to further discuss any of thes issues.

    Very truly yours,

    Brent D. Knight

    Brent D. Knight

**Exhibit 3**

# BRUGGEMAN, HURST & ASSOCIATES, PC

### ATTORNEYS AT LAW

20012 WOLF ROAD
SUITE 200
MOKENA, ILLINOIS 60448
PHONE: (708) 478-6900
FAX: (708) 478-6911

ALAN R. BRUGGEMAN
DAVID C. HURST

JEANETTE M. RIEL
(1960-2007)

MICHAEL G. BOUCK
MIKAL J. STOLE
CHRIS KOCHANOWICZ

July 1, 2008

**VIA FACSIMILE**
**(312) 782-8585**
Ms. Rheaana Towner Guess
Jones Day
77 West Wacker
Suite 3500
Chicago, Illinois 60601

Re:   Miller/National City Mortgage

Dear Ms. Guess:

Thank you for your letter of June 26, 2008. Regardless of company policy, your client unlawfully seized and detained my clients' personal property and still refuses to return the property and is liable for damages, including for any property lost or stolen.

My clients refuse to allow you access to their personal computers and have directed me to file suit to obtain the return of their property and damages for any loss, and for wrongful termination.

Very truly yours,

Alan R. Bruggeman

ARB:jmc